## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WILLIAMS ROWLAND ACQUISITION CORP., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 24-471-RGA-SRF |
| GLOBAL FOOD AND INGREDIENTS LTD., DAVID HANNA, WILLIAM MURRAY, and MAXIM GROUP LLC, | ) ) ) ) ) | |
| Defendants. | ) | |

### REPORT AND RECOMMENDATION

Presently before the court in this civil action for breach of contract, fraud, and aiding and abetting fraud are the following motions: (1) the partial motion to dismiss Counts I and III of the amended complaint for failure to state a claim under Rule 12(b)(6), filed by defendant Maxim Group LLC ("Maxim"),[1] (D.I. 23);[2] and (2) the motion for alternative service under Federal Rule of Civil Procedure 4(f)(3), filed by plaintiff Williams Rowland Acquisition Corp. ("Plaintiff"), (D.I. 33). For the following reasons, I recommend that the court GRANT-IN-PART Maxim's partial motion to dismiss. Plaintiff's motion for alternative service is GRANTED.[3]

---

[1] Global Food and Ingredients Ltd. ("GFI"), David Hanna ("Hanna"), and William Murray ("Murray") are also defendants in this action. (D.I. 1) However, these defendants did not join in Maxim's motion to dismiss.

[2] The briefing and filings associated with the pending motion to dismiss are found at D.I. 24, D.I. 25, D.I. 29, and D.I. 31.

[3] Motions for alternative service under Rule 4(f)(3) are non-dispositive. *See Werremeyer v. Shinewide Shoes, Ltd.*, 2021 WL 3291683, at *2 (D.N.J. July 31, 2021) (citing *Vanderhoef v. China Auto Logistics Inc.*, 2019 WL 6337908, at *1-2 (D.N.J. Nov. 26, 2019)). Consequently, the court's ruling on Plaintiff's motion for alternative service is governed by 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and D. Del. LR 72.1(a)(2).

## I.    BACKGROUND[4]

Plaintiff is a Delaware corporation formed as a special purpose acquisition company ("SPAC"), which acts as a funding vehicle to acquire a foreign operating company and take it public on a U.S. exchange without an initial public offering ("IPO"). (D.I. 18 at ¶¶ 1, 3, 9, 14) Defendant Global Food and Ingredients Ltd. ("GFI") is an Ontario corporation that produces specialty crops for the food and pet food industries. (*Id.* at ¶ 10) Defendant David Hanna served as GFI's chief executive officer ("CEO"), and defendant William Murray acted as GFI's chief financial officer ("CFO") and Director of Finance during the relevant time period. (*Id.* at ¶¶ 11-12) Maxim served as GFI's investment banker. (*Id.* at ¶ 13)

As a SPAC, Plaintiff was required to acquire an operating company within a specified time period, and the chosen company was required to have financial statements that complied with the requirements of the Public Company Accounting Oversight Board ("PCAOB") before the acquisition could take place. (*Id.* at ¶¶ 3, 14) Plaintiff initially had until January 29, 2023 to complete an acquisition and later extended the acquisition deadline to March 29, 2024. (*Id.* at ¶¶ 15-17)

Beginning on May 9, 2023, Maxim contacted Plaintiff regarding several potential target corporations, but Plaintiff rejected each proposal. (*Id.* at ¶¶ 19-25) On October 30, 2023, Maxim reached out to Plaintiff to propose GFI as a target, emphasizing that GFI had "audited financials" and "meets financial reporting requirements." (*Id.* at ¶¶ 26-27) Plaintiff signed a

---

[4] For purposes of the pending motion to dismiss, the court has considered only the allegations in the amended complaint. (D.I. 18) References to evidence outside the pleading are made only in connection with Plaintiff's motion for alternative service. *See Hudson Furniture, Inc. v. Mizrahi*, 2022 WL 16954854, at *2 (Fed. Cir. Nov. 16, 2022) (concluding the district court properly considered the evidence submitted by the plaintiff and determined the plaintiff showed sufficient cause for alternative service).

nondisclosure agreement ("NDA") the same day to obtain further information about GFI. (*Id.* at ¶ 28) The next day, Plaintiff followed up with Maxim to ask about next steps, noting that it had "a few other potential business combinations and need[ed] to make a decision." (*Id.* at ¶ 30) Maxim and GFI jointly prepared an investor presentation emphasizing GFI's status as a "US Publicly Ready SPAC Opportunity" that had "Public Ready, Audited Financials" which "[c]urrently meet financial reporting requirements under IFRS IASB standards." (*Id.* at ¶¶ 30-31)

Negotiations between Plaintiff, Maxim, and GFI on the terms of a letter of interest ("LOI") began on November 6, 2023, and Plaintiff asked Maxim to send GFI's current capitalization table, audited financials, and projections. (*Id.* at ¶¶ 33-34) The following day, Maxim provided Plaintiff with GFI's financial statements for 2022, 2023, and the first quarter of 2024, which were not PCAOB-compliant. (*Id.* at ¶ 35)

On November 15, 2023, Maxim sent Plaintiff a revised LOI that required Plaintiff to terminate any ongoing acquisition discussions with other potential targets and prohibited Plaintiff from engaging in discussions with other targets during the term of the LOI. (*Id.* at ¶ 38) Later that day, Plaintiff made a counterproposal on price to Maxim and GFI and stated its goal of having the LOI signed by the end of the week. (*Id.*) Plaintiff sent Maxim and GFI a revised LOI on November 16, 2023 that required GFI's financial statements to be prepared by "an audit firm registered with the PCAOB," with PCAOB-audited financial statements due no later than December 15, 2023. (*Id.* at ¶¶ 39-40) The parties exchanged further revisions in the ensuing days, but no changes were made to the December 15, 2023 deadline for providing PCAOB-audited financials. (*Id.* at ¶¶ 41-44)

Plaintiff asked Maxim and GFI to confirm that GFI's financials needed to be prepared in accordance with PCAOB standards, and that compliance could be achieved before the end of 2023. (*Id.* at ¶¶ 49-50) Murray confirmed his understanding that achieving PCAOB compliance "should not delay the listing," and Maxim circulated a revised LOI on November 28, 2023 changing the deadline for PCAOB-audited financials to December 31, 2023 with a note stating "Need to confirm." (*Id.* at ¶ 49-52) The comment was subsequently deleted, but Plaintiff expressed concern about the amount of time GFI was taking to complete the PCAOB audit. (*Id.* at ¶¶ 53-54)

On November 30, 2023, Plaintiff asked Maxim and GFI if they had confirmed completion of the PCAOB requirements by December 31, 2023. (*Id.* at ¶ 56) Murray responded that extra time was needed, and Plaintiff requested confirmation that preliminary conversations with GFI's auditors at KPMG had occurred. (*Id.*) Hanna provided the requested confirmation that the PCAOB audit would be complete by December 31. (*Id.*) Relying on Hanna's assurances, Plaintiff signed the LOI on December 1, 2023 terminated its discussions with other acquisition targets. (*Id.* at ¶ 57)

After signing the LOI, Plaintiff inquired about the audit schedule and sought updates on GFI's progress toward meeting the December 31, 2023 deadline. (*Id.* at ¶¶ 59-60) On December 8, 2023, Maxim disclosed that the PCAOB audit could not start until mid-February 2024 at the earliest, based on its "initial calls" with the auditor. (*Id.* at ¶ 60) Plaintiff pressed GFI to disclose who at KPMG had represented that the audit could be completed by December 31, and GFI revealed that KMPG had never confirmed a specific delivery date for the audit. (*Id.* at ¶¶ 65-70) Plaintiff urged GFI and KPMG to expedite the PCAOB audit. (*Id.* at ¶¶ 63, 65, 71-76)

4

Maxim contacted Plaintiff on December 22, 2023 in response to Plaintiff's pressure campaign on GFI and KPMG, informing Plaintiff that the LOI was non-binding and Plaintiff was free to walk away from the transaction. (*Id.* at ¶ 77) Plaintiff responded that it still wanted to finalize the deal, and it intended to continue pressuring KPMG to expedite the PCAOB audit. (*Id.*) The next day, Murray and Hanna informed Plaintiff that the PCAOB audit was scheduled to begin on March 16, 2024 and it would take about a month to complete. (*Id.* at ¶ 78) On January 2, 2024, Murray admitted that there had been no basis for GFI's previous confirmations that the PCAOB audit would be completed by December 31, and he asked Plaintiff to stop contacting KPMG directly about the audit. (*Id.* at ¶ 82)

Plaintiff terminated the LOI on January 7, 2024 due to GFI's failure to provide the requisite PCAOB-audited financial statements by December 31, 2023. (*Id.* at ¶¶ 79, 84) Plaintiff was unable to acquire any other target during the required timeframe and, as a result, it was forced to wind up and return its stockholders' investments. (*Id.* at ¶ 85)

Plaintiff filed this action on April 12, 2024, asserting a cause of action for breach of contract against GFI and a cause of action for fraud against both Maxim and GFI. (D.I. 1) On June 28, 2024, Plaintiff was notified that GFI had entered receivership the previous month in Ontario, Canada. (D.I. 34, Exs. B-D) Plaintiff filed an amended complaint in this action on July 26, 2024, adding Hanna and Murray as defendants and including a third count against Maxim for aiding and abetting GFI's fraud. (D.I. 18)

Maxim filed the pending motion to dismiss on September 23, 2024, seeking dismissal of Plaintiff's claims for fraud and aiding and abetting fraud at Counts I and III of the amended complaint, respectively. (D.I. 23) The following day, Plaintiff sent the amended complaint and summons to Hanna and Murray at their last known address. (D.I. 34, Ex. F)

5

On October 23, 2024, Hanna and Murray's counsel at Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden") confirmed that they had actual knowledge of the amended complaint. (D.I. 34, Ex. G)  Plaintiff asked Skadden accept service of the amended complaint on behalf of Hanna and Murray, but Skadden responded that it was not authorized to accept service on behalf of Hanna or Murray at that time.  (*Id.*, Ex. H)  On November 6, 2024, Skadden confirmed that Hanna had received the amended complaint but Murray had not.  (*Id.*, Ex. I)

On December 12, 2024, Plaintiff engaged skip-tracers to locate Hanna and Murray.  On January 7, 2025, the skip-tracers identified a possible residence for Hanna, and Plaintiff sent a summons and amended complaint ten days later in accordance with the Hague Convention.  (D.I. 34, Ex. K)  As of January 27, 2025, the skip-tracers reported they were still unable to identify an address for Murray.

## II.    DISCUSSION

### A.  Motion to Dismiss

Maxim moves to dismiss Counts I and III of the amended complaint under Rule 12(b)(6), which permits a party to seek dismissal for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true in the light most favorable to the plaintiff, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).  A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at

6

663; *Twombly*, 550 U.S. at 555-56.

When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiffs. *Umland v. Planco Fin.*, 542 F.3d 59, 64 (3d Cir. 2008). The court may consider only the allegations in the complaint, documents incorporated by reference into the complaint, and matters of which the court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

Counts I and III of the amended complaint assert claims sounding in fraud, which must be pled with particularity under Rule 9(b) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 9(b). The Third Circuit has interpreted Rule 9(b) to require that plaintiffs "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which it is charged' and 'plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.'" *Alpizar-Fallas v. Favero*, 908 F.3d 910, 919 (3d Cir. 2018) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)). Knowledge and intent "may be alleged generally." Fed. R. Civ. P. 9(b).

### 1. Count I: Common Law Fraud

To state a claim for common law fraud under Count I, the amended complaint must allege: "(1) a false representation by the defendant; (2) the defendant's knowledge of or reckless indifference to the falsity of the representation; (3) the defendant's intent to induce the plaintiff to act; (4) that the plaintiff's actions were taken in justifiable reliance on the false representation; and (5) damages stemming from the plaintiff's reliance." *RBATHTDSR, LLC v. Project 64 LLC*, C.A. No. 19-1280-RGA, 2020 WL 2748027, at *6 (D. Del. May 27, 2020) (citing *Stephenson v.*

*Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983)).  Maxim contends that the amended complaint fails to plead factual allegations in support of the first, second, fourth, and fifth elements of the fraud claim.  (D.I. 24 at 8)  The court focuses its analysis on Maxim's position that the amended complaint fails to plausibly allege actionable false representations against it under the first element of an action for common law fraud.  *See Versar Env't Servs., LLC v. Black & Veatch Special Projects Corp.*, C.A. No. 23-1450-RGA, 2024 WL 5090804, at *7 (D. Del. Dec. 12, 2024); *Neurvana Med., LLC v. Balt USA, LLC*, 2020 WL 949917, at *24 (Del. Ch. Feb. 27, 2020) (concluding that the plaintiff failed to adequately plead an actionable false statement in support of its common law fraud claim, supporting dismissal of the claim under the conjunctive test for common law fraud).

The first element of a fraud claim "can be established one of three ways:  (1) an overt misrepresentation; (2) silence in the face of a duty to speak; or (3) active concealment of material facts."  *Air Prods. & Chems., Inc. v. Wiesemann*, 237 F. Supp. 3d 192, 215 (D. Del. 2017). Maxim argues that the amended complaint does not identify any affirmative false statements it made to Plaintiff, and the pleading fails to allege facts establishing that Maxim had a duty to speak regarding GFI's alleged misrepresentations.  (D.I. 24 at 8-9)  Plaintiff responds that Maxim affirmatively misrepresented the status of GFI's U.S. listing and financial reporting requirements.  (D.I. 29 at 9-10)  Plaintiff further alleges that Maxim had a duty to correct GFI's false representations.  (*Id.* at 11-12)

The amended complaint describes three instances when Maxim represented to Plaintiff that GFI had audited financials and met financial reporting requirements.  On October 30, 2023, Maxim contacted Plaintiff by email to introduce GFI as a potential target that was "[w]ell-positioned for a SPAC business combination – audited financials[.]"  (D.I. 18 at ¶ 26)  Maxim

also included a "teaser" that stated the target company was "audited and meets financial reporting requirements," and it had "[p]olicies, process and committees that are anticipated to align with SEC and US listing requirements." (*Id.* at ¶ 27)  The next day, Maxim provided Plaintiff with an investor presentation reiterating that GFI "is US public company ready, and well positioned for a SPAC business combination[,]" with "Public Ready, Audited Financials" that "[c]urrently meet financial reporting requirements under IFRS IASB standards." (*Id.* at ¶ 31; D.I. 25, Ex. 3)

The amended complaint does not plausibly allege that the statements made by Maxim on October 30 and 31 were overt misrepresentations.  There is no dispute that GFI was audited and met financial reporting requirements under IFRS IASB standards, consistent with Maxim's alleged representations.  Plaintiff does not identify any statements by Maxim specifically indicating that GFI was PCAOB-compliant.  To the contrary, Maxim's alleged representation that GFI had "[p]olicies, process and committees that *are anticipated* to align with SEC and US listing requirements" suggests that GFI was not compliant with SEC and U.S. listing requirements, such as PCAOB auditing requirements, at the time those representations were made.  (D.I. 18 at ¶ 27) (emphasis added).

The pleading also fails to plausibly allege that Maxim was silent in the face of a duty to correct GFI's alleged misrepresentations about its ability to complete the PCAOB audit by December 31, 2023.  (*Id.* at ¶¶ 92-93)  In Delaware, "[a]n affirmative obligation to speak arises only where there is a fiduciary or other special relationship of trust and confidence between the parties." *Air Prods. & Chems.*, 237 F. Supp. 3d at 215 (citing *Prairie Capital III, L.P. v. Double E Holding Corp.*, 132 A.3d 35, 52 (Del. Ch. 2015)).  A party has no affirmative duty to speak in an arm's length contractual setting. *Id.*  As GFI's advisor and investment banker, Maxim had no

fiduciary or other special relationship with Plaintiff, who was on the opposite side of the arm's length transaction when Plaintiff and GFI negotiated the terms of the LOI. (D.I. 18 at ¶¶ 1, 13, 38-44, 51-53)

Plaintiff does not challenge Maxim's position regarding the absence of a fiduciary duty or special relationship between Maxim and GFI that would trigger a duty to speak, nor does Plaintiff address the case authority cited by Maxim. (D.I. 29 at 11-12) Instead, Plaintiff cites Section 551 of the Restatement (Second) of Torts, which provides that "a *party* to a business transaction" has a duty to disclose certain information about the transaction. (*Id.* at 11) (emphasis added). Because Maxim was not a party to the LOI, Section 551 is inapplicable and does not impose a duty to speak.

Citing non-binding cases from other districts and circuits, Plaintiff contends that a third party acting as a broker or agent for the seller may also be liable for non-disclosure of a material representation. (*Id.*) Plaintiff discusses at length a decades-old Sixth Circuit decision, in which a purchaser brought an action against a bank to recover damages arising out of the bank's misrepresentations about the financial stability of one of its customers. *See Central States Stamping Co. v. Terminal Equip. Co., Inc.*, 727 F.2d 1405, 1408-09 (6th Cir. 1984). Although the plaintiff directly asked the bank about the financial status of the company, the bank gave only positive responses and withheld its knowledge of the company's financial trouble, including defaults on two loans. *Id.* In reliance on the bank's representations, the plaintiff entered into the purchase contract. *Id.* at 1409.

The facts of *Central States* are distinguishable from those before the court in this case. There, the bank had assumed "tight control" over the company's financial operations when it made affirmative representations about the company's financial status. *Id.* at 1409, 1411. Here,

10

in contrast, Plaintiff does not allege that Maxim made any affirmative representations about the status of GFI's PCAOB compliance before the LOI was executed.  Instead, the amended complaint alleges that Plaintiff asked both Maxim and GFI to confirm the PCAOB work would be completed by December 31, 2023, but only Murray and Hanna of GFI responded to Plaintiff's inquiries with assurances that the PCAOB audit would be complete by the end of the year.  (D.I. 18 at ¶ 56)  "[I]f a party in an arms' length transaction chooses to speak, then it cannot lie[,]" nor can it "do so partially or obliquely such that what the party conveys becomes misleading." *Prairie Capital*, 132 A.3d at 52 (citing *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983)).  Because Maxim had no duty to speak and chose not to speak, it had no obligation to correct alleged misrepresentations by GFI.

I recommend that the court GRANT Maxim's motion to dismiss Count I of the amended complaint and dismiss Plaintiff's cause of action for common law fraud against Maxim because the pleading fails to plausibly allege that Maxim either made a false representation or had a duty to speak to correct alleged misrepresentations by GFI.  *See Winfield v. Eloxx Pharms., Inc.*, C.A. No. 19-447-RGA, 2020 WL 1333008, at *2, 4 (D. Del. Mar. 23, 2020) (dismissing claim for common law fraud for failure to plead an actionable misstatement).  Because the amended complaint does not plausibly allege a false representation, the court need not reach the remaining elements of Plaintiff's fraud claim against Maxim.  *See Neurvana Med.*, 2020 WL 949917, at *23-24 (describing the elements of a common law fraud claim as conjunctive and dismissing claim for failure to plead an actionable misstatement).

### 2. Count III: Aiding and Abetting Fraud

To state a claim for aiding and abetting fraud, Count III of the amended complaint must allege Maxim knew of someone else's fraud and substantially assisted it. *Mech. Contractors Ass'n of Am., Inc. v. Hilton Franchise Holding, LLC*, C.A. No. 20-759-SB, 2020 WL 7481771, at *2 (D. Del. Dec. 18, 2020) (citing *MKE Holdings Ltd. v. Schwartz*, 2020 WL 467937, at *16 (Del. Ch. Jan. 29, 2020)). Maxim contends that none of these elements is satisfied by the allegations in the amended complaint. (D.I. 24 at 15-19) With respect to the first element, GFI has not challenged the sufficiency of the fraud allegations against it, and Count III of the amended complaint identifies GFI's tortious conduct as the predicate act of fraud. (D.I. 18 at ¶ 102) For purposes of this motion, the first element for aiding and abetting fraud is satisfied by allegations of GFI's underlying fraud.

Next, Maxim argues that the amended complaint contains only conclusory assertions that Maxim knew of GFI's fraud, and any awareness of GFI's fraud should have been equally apparent to Plaintiff. (D.I. 24 at 15-17) Plaintiff responds that knowing participation is satisfied by "constructive knowledge," which includes "reckless indifference" to the truth,[5] and Maxim was recklessly indifferent to the truth about GFI's readiness to go public. (D.I. 29 at 18)

---

[5] Maxim argues that the amended complaint does not contain the word "reckless," and Plaintiff cannot properly introduce a new theory of Maxim's knowledge in its answering brief to the motion to dismiss. (D.I. 31 at 9) The case authority cited by Maxim does not specify that the word "reckless" must appear in the pleading for a fraud claim to survive dismissal on the knowledge element. *See, e.g., Dolphin Ltd. P'ship I, L.P. v. Gupta*, 2007 WL 315864, at *1 (Del. Ch. Jan. 22, 2007) (generally stating, in the context of a motion to consolidate, that the court considers only allegations in the complaints, not subsequent briefs, when it evaluates a motion to dismiss). Courts have generally held that a plaintiff need not use particular words in the pleading, so long as the pleaded allegations are sufficient to support an inference of the intended meaning. *See Anthony Allega Cement Contractor, Inc. v. Johnson Controls Fed. Sys./Versar, LLC*, C.A. No. 18-875-SRF, 2019 WL 1792201, at *7 (D. Del. Apr. 24, 2019) (explaining that a plaintiff need not use particular words to plead in the alternative); *see also*

12

Viewing the pleaded averments in the light most favorable to Plaintiff, it can be inferred that Maxim either knew GFI misrepresented its readiness to go public or it was recklessly indifferent to signs that GFI's PCAOB audit would not be completed in time. *See Matrix Parent, Inc. v. Audax Mgmt. Co., LLC*, 319 A.3d 909, 942 (Del. Super. Ct. 2024). The amended complaint confirms that Maxim had access to GFI's financial statements, which were not PCAOB-compliant when Maxim provided them to Plaintiff on November 7, 2023. (D.I. 18 at ¶¶ 34-35) The pleading further alleges that Maxim participated in exchanges about the draft LOI, which specified that Plaintiff expected to receive PCAOB-audited financial statements for GFI in December of 2023 and requested confirmation that GFI was speaking with the auditors at KPMG. (*Id.* at ¶¶ 39-41, 47, 50-53, 56) Nonetheless, a week after the LOI was executed, Maxim disclosed that the PCAOB audit would not start until mid-February based on "initial calls with KPMG." (*Id.* at ¶¶ 60) These averments give rise to a plausible inference that Maxim was in a position to verify the condition and readiness of GFI's financial statements, and it either knew GFI's representations to Plaintiff about the status of the PCAOB audit were not accurate or it recklessly failed to verify the accuracy of those representations. *See FinancialApps, LLC v. Envestnet, Inc.*, C.A. No. 19-1337-CFC-CJB, 2020 WL 4569466, at *7 (D. Del. July 30, 2020) (confirming that scienter may be alleged generally in the context of a fraud-based claim).

Finally, Maxim contends that there are no pleaded allegations suggesting Maxim substantially assisted Defendants' commission of fraud. (D.I. 24 at 18-20) "To meet the substantial assistance element, plaintiffs must plead that the defendants who served as secondary actors consciously participated in the fraudulent acts. This element may also be met by inaction,

*Crowell v. FCA US LLC*, C.A. No. 23-13-MN, 2024 WL 4333088, at *9 (D. Del. Sept. 27, 2024) (acknowledging that courts do not typically require parties to plead "magic words" to survive dismissal).

but only if the inaction was consciously intended to aid the fraud." *Brug v. Enstar Grp., Inc.*, 755 F. Supp. 1247, 1256 (D. Del. 1991). The amended complaint plausibly alleges that Maxim substantially assisted GFI's fraud by facilitating communications with Plaintiff and GFI regarding GFI's readiness for a SPAC transaction during negotiations about the terms of the LOI. (D.I. 18 at ¶¶ 51-53) When Plaintiff grew increasingly concerned about GFI's ability to obtain PCAOB-compliant financials by December 31, 2023, Maxim responded by "push[ing] [Plaintiff] to sign the letter of intent." (*Id.* at ¶ 56) Maxim disclosed that the PCAOB-audited financials would not be ready before the end of the year only after Plaintiff executed the LOI, and it continued to pressure Plaintiff "to extend the LOI and push the deal forward[.]" (*Id.* at ¶¶ 60-61) Maxim's involvement in regular communications with Plaintiff about the status of the PCAOB audit and its efforts to pressure Plaintiff to continue pursuing the deal support an inference that Maxim substantially assisted GFI's purported fraud. *See Yangaroo Inc. v. Digital Media Services, Inc.*, 2024 WL 2791100, at *11 (Del. Super. Ct. May 30, 2024) (finding a "fair inference" that the moving defendants substantially assisted the purported fraud through their involvement in the due diligence process, which included regular communications regarding disclosure obligations).

For the foregoing reasons, I recommend that the court DENY Maxim's motion to dismiss Count III of the amended complaint. *See Clark v. Davenport*, 2019 WL 3230928, at *15 (Del. Ch. July 18, 2019) ("Claims for aiding and abetting are 'fact intensive and ill-suited' for disposition on the pleadings.").

### 3.  Damages

Maxim challenges the sufficiency of Plaintiff's damages claim against it only in connection with Count I of the amended complaint for common law fraud, arguing that there can be no damages for failing to close a deal with a business that is now bankrupt.  (D.I. 24 at 15)  For the reasons stated at § II.A.1, *supra*, the fraud claim against Maxim fails for lack of an actionable misstatement or omission, and Maxim's challenge to the sufficiency of the damages allegations against it is therefore moot.  The court makes no recommendation with respect to the sufficiency of Plaintiff's damages allegations as to the remaining claims.

### B.  Motion for Alternative Service

Plaintiff moves for leave to serve defendants Hanna and Murray via their U.S.-based counsel at Skadden and their business email addresses at GFI.  (D.I. 34 at 1)  Rule 4(f) describes how service must be made on a defendant located in a foreign country.  Plaintiff seeks to serve process under Rule 4(f)(3), which permits service "by any means not prohibited by an international agreement, as long as the chosen means satisfies the due process requirement of being 'reasonably calculated' to apprise the parties of interest of the action." *Ocimum Biosolutions (India) Ltd. v. LG Chem. Ltd.*, C.A. No. 19-1227-MN, 2021 WL 2403134, at (2 (D. Del. June 11, 2021) (citing *Divx, LLC v. LG Elecs. Inc.*, C.A. No. 20-1202-CFC-JLH, 2021 WL 411708, at *2 (D. Del. Feb. 5, 2021)).

The court is unaware of any international agreement that prohibits service of process on a foreign defendant via e-mail to its U.S. counsel. *See DUSA Pharms., Inc. v. Biofrontera Inc.*, 2024 WL 4151169, at *5 (D.N.J. Sept. 11, 2024) ("[N]othing in the Hague Convention or another international agreement prohibits service on a foreign defendant's United States-based law firm.").  In fact, "[c]ourts have held that the [Hague] Convention is not relevant when the

15

proposed method of alternative service is to be effectuated domestically." *Vanderhoef v. China Auto Logistics Inc.*, 2019 WL 6337908, at *3 (D.N.J. Nov. 26, 2019) (citing cases).

Moreover, service via e-mail to Hanna and Murray's U.S. counsel is reasonably calculated to inform Hanna and Murray about this action for purposes of comporting with due process requirements. *See Knit With v. Knitting Fever, Inc.*, 2010 WL 4977944, at *5 (E.D. Pa. Dec. 7, 2010) (concluding that e-mail service comported with due process where the record suggested that the defendant would likely receive the summons and complaint); *Marlabs Inc. v. Jakher*, 2010 WL 1644041, at *3 (D.N.J. Apr. 22, 2010) (holding that service effectuated through a foreign defendant's U.S. counsel comported with due process because the implicit contact with one another was sufficient to place the defendant on notice). The correspondence attached to Plaintiff's motion for alternative service confirms that Skadden represents both Hanna and Murray, and it has sufficient contact with both clients to confirm that Hanna received the complaint and Murray did not. (D.I. 34, Ex. J)

Finally, proceeding with email service on Hanna and Murray's U.S. counsel under Rule 4(f)(3) is warranted because the record confirms Plaintiff made reasonable efforts to effectuate service on Hanna and Murray. Specifically, Plaintiff retained skip-tracers to identify potential addresses for Hanna and Murray and served a summons and complaint via the Hague Convention to the address identified for Hanna. (D.I. 34, Ex. K) Courts have held that alternative service under Rule 4(f)(3) is justified where, as here, Murray's address remains unknown. *See Vanderhoef*, 2019 WL 6337908, at *3 (explaining that alternative service is warranted where the plaintiffs attempted to comply with the Hague and unsuccessfully attempted to serve the defendants at their last known addresses).

Plaintiff also seeks leave to serve Hanna and Murray via their GFI business email addresses under Rule 4(f)(3). (D.I. 34 at 8-10) The Hague Convention does not specifically address "service by email, fax, or other means of delivery unknown in the 1960s." *Habas Sinai Ve Tibbi Gazlar Istihsal A.S. v. Int'l Tech. & Knowledge Co.*, 2019 WL 7049504, at *3 (W.D. Pa. Dec. 23, 2019) (internal quotation marks and citations omitted). However, email service on a foreign defendant is generally disfavored only when the foreign country has objected to "service by postal channels" under Article 10 of the Hague Convention. *Id.* at *4. Hanna and Murray are residents of Canada, which has affirmatively stated that it does not object to service by postal channels under Article 10 of the Hague Convention. *See Trump Taj Mahal Assocs. v. Hotel Servs., Inc.*, 183 F.R.D. 173, 178-79 (D.N.J. 1998) (citing cases). Plaintiff has shown that service by email on Hanna and Murray at their GFI email addresses is likely to be effective because they are listed as GFI's representatives in the receivership on the service list, which provides their GFI email addresses. (D.I. 34, Ex. C)

Under these circumstances, and in the exercise of the court's discretion, Plaintiff's motion for alternative service is GRANTED. On or before **June 20, 2025**, Plaintiff shall serve Hanna and Murray through their U.S.-based counsel at Skadden by email, and by sending process via Hanna and Murray's GFI email addresses.

## III.    CONCLUSION

For the reasons discussed above, I recommend that the court GRANT-IN-PART Maxim's Rule 12(b)(6) motion to dismiss for failure to state a claim. (D.I. 23) Specifically, I recommend that the court GRANT Maxim's motion to dismiss Count I of the amended complaint for fraud, as it pertains to Maxim, and DENY Maxim's motion to dismiss Count III of the amended complaint for aiding and abetting fraud.

IT IS ORDERED that Plaintiff's motion for alternative service under Rule 4(f)(3) is

GRANTED. (D.I. 33) Plaintiff shall serve Hanna and Murray through their U.S.-based counsel

at Skadden by email, and by sending process via Hanna and Murray's GFI email addresses. On

or before **June 20, 2025**, Plaintiff shall complete service and file proof of service with the court.

IT IS FURTHER ORDERED that the oral argument scheduled for May 28, 2025 at 10:00

a.m. is CANCELLED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R.

Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections

within fourteen (14) days after being served with a copy of this Report and Recommendation.

Fed. R. Civ. P. 72(b). The objections and responses to the objections are limited to ten (10)

pages each. The failure of a party to object to legal conclusions may result in the loss of the right

to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir.

1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the court's Standing Order for Objections Filed Under Fed. R.

Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website,

http://www.ded.uscourts.gov.

Dated: May 20, 2025

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE